IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | NO. 1:11-CR-423-AT |
| | : | |
| JAMES EDWARDS ROBERTS, | : | |
| | : | |
| DEFENDANT. | : | |

# **O R D E R**

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 38] and Defendant' Objections to the R&R [Doc. 41]. The Magistrate Judge's R&R recommended that Defendant Roberts' Motions to Suppress Statements and Evidence [Docs. 11 and 12] be granted in part and denied in part.

## I.    LEGAL STANDARD

Under Fed. R. Crim. P. 59(a), a magistrate judge may rule on any matter referred by a district judge that does not dispose of a charge or defense.  If any party files objections to a magistrate judge's order on nondispositive matters, "the district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous."  Fed. R. Crim. P. 59(a).  Fed. R. Crim. P. 59(b) provides that a magistrate judge may make recommendations and proposed findings of fact on dispositive matters referred

by a district judge.  A party who wishes to object to such recommendations by a magistrate judge must "file specific written objections," and the "[f]ailure to object in accordance with [Rule 59(b)(2)] waives a party's right to review."  Fed. R. Crim. P. 59(b)(2).  Under Fed. R. Crim. P. 59(b)(3), the "district judge must consider de novo any objection to the magistrate judge's recommendation."

If no objections are filed to a magistrate judge's recommendation, the district judge reviews the report and recommendation for clear error and may "accept, reject, or modify" the magistrate's findings and recommendations.  28 U.S.C. § 636(b)(1).  Where the parties do not file objections, 28 U.S.C. § 636 does not require the district court to review any issue in dispute de novo; however, the statute "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard."  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

The Defendant filed timely objections to some but not all parts of the Magistrate Judge's R&R here. Accordingly, the Court has considered those portions of the R&R to which no objections were filed based on a "clear error" standard of review pursuant to 28 U.S.C. § 636(b)(1), and provided a de novo review as to all matters addressed in Defendant's objections pursuant to Fed. R. Crim. P. 59(b)(3).

## II.    DEFENDANT'S OBJECTIONS

### A. Evidentiary Findings

The Defendant agrees with the Magistrate Judge's summary of the underlying basic facts at pages 1-6 of her R&R, except that he notes that the R&R omits some relevant facts presented at the two hearings conducted in conjunction with the motions to suppress.    The Defendant additionally objects to  the Magistrate Judge's finding later in her order that the "time that elapsed between the illegal *entry of the narcotics detectives and the search* as brief, perhaps as little as ten minutes." (Doc. 38 at 20.)  (Emphasis supplied.)   The Court finds no clear error in the Magistrate Judge's summary of the basic facts in this matter, (Doc. 38 at 1-6), but notes as well that some relevant facts were omitted. Additionally, the Court notes that it disagrees with the Magistrate Judge's factual or partial factual findings in Section II of the R&R as to the ten-minute lapse described above, her assessment of the purpose and "back-up" role played by the narcotics investigators, and the comprehensiveness of the Atlanta Police Department ("APD") consent form utilized.    However, having conducted a complete review of the record in this matter and finding no clear error in the Magistrate Judge's summary of the facts in Section I of her R&R, (pp 1- 6), the Court adopts the Magistrate Judge's summary of the facts in Section I,  as supplemented by other record evidence.[1]

---

[1]   To the extent that the Magistrate Judge's legal analysis in Section II makes additional fact findings, the Court declines at this time to adopt these findings.

Defendant's Objections set forth additional evidence from the record for the Court's consideration that has been duly considered in conjunction with the Court's own review of the transcript of the motion hearings and exhibits. The Court will not repeat here the basic facts set forth in the R&R, but instead refers to the Magistrate's Judge's R&R initial factual summary, (Doc. 38 at 1-6), as background to the ensuing discussion.

Mr. Roberts contends that the ten-minute interval referred to by the Magistrate Judge in her discussion occurred, in fact, between the time that Officer Funderbrik initially entered the Defendant's hotel room and the time of the narcotics detectives' conducing their search of the room. Defendant suggests that the Magistrate Judge may have simply made a typographical error in referring to this short time lapse as occurring between the detectives' own entry into Defendant's room and their search. (Doc. 41 at 9.)

The R&R does not identify in the record the basis of the ten-minute interval finding described with respect to the narcotic detectives' own activities.[2] On the other hand, both the R&R and the officers' testimony at the December 13, 2011, hearing suggest that a short interval of time transpired between the time that Officer Funderbrik first entered the hotel room with Ms. White (the hotel assistant manager) and the time when detectives Trotta, Plummer, and Kirkman

---

[2] Detective Plummer gave the only testimony that even attempted to quantify the time that elapsed during the narcotics detectives' search. Plummer testified that he was not sure whether the narcotics officers started searching immediately upon obtaining the Defendant's consent after arriving at the hotel room. "It wasn't, you know, 10, 15 minutes. It was probably a few minutes we paused, and then that's when we conducted the search." (Tr-1 at 113.)

arrived at the hotel and conducted a further search of the hotel suite. No specific

evidence was submitted as to the precise length of Officer Funderbrik's

examination of the Defendant after he entered the hotel room. Officer Noble

arrived next, after Funderbrik had called the APD precinct regarding his

discovery of narcotics in the Defendant's room. According to Officer Noble, the

APD precinct office was so close to the hotel that "you could probably run to it in

probably like a minute or less." (Tr- 1 at 53.) Officer Noble arrived within two to

three minutes because he had to drive around the block. (*Id.*) The record is

silent as to how the three narcotics detectives traveled, but they apparently had

already been dispatched by the time Officer Noble arrived at the hotel room and

called the APD precinct. In any event, they arrived soon after Noble made his

own call to the precinct and in short order conducted a supplemental search of

the suite for drugs and other contraband.[3] Based on the facts described in the

R&R and in the hearing transcript, it is clear that a short period of time elapsed

from the time Officer Funderbrik entered the Defendant's hotel room to the time

the narcotics detectives' conducted their search. Given the sequence of events

and holes in the record, the Court cannot find that this interval was a ten- minute

---

[3] The government introduced no dispatch, phone, or similar investigative records which could have been used to more precisely pin down the length of time between Officer Funderbrik's entry into and search of the Defendant's room and the detectives' further search. Officer Funderbrik also was not called to testify at the two separate hearings conducted in connection with the Defendant's motions.

period as Defendant contends; on the other hand, these events clearly transpired in a condensed time frame on the evening of February 3, 2010.[4]

### B. Objections to the Magistrate Judge's Legal Analysis and Conclusions

The Defendant's Objections to the R&R principally focus on the Magistrate Judge's legal conclusion that the Defendant's consent to APD police narcotics investigators' search of his hotel room was not tainted by other APD police officers' prior constitutional violations in conducting the initial entry and search of Defendant's room. Defendant states he "does not object to the remaining legal conclusions: that Officer Funderbrik's warrantless entry was unlawful, (Doc. 38 at 7-12); that the drugs found by Officer Noble must be suppressed, (Doc. 38 at 12-16), and that Mr. Roberts' statements to the narcotics investigators were voluntary, (Doc. 38 at 24-26)." (Doc. 41 at 1.) The Court similarly finds that while substantial issues are posed by the Magistrate Judge's R&R with respect to whether the narcotic officers' entry and search of the Defendant's room for drugs impermissibly bears the taint of the unconstitutional prior search and seizure conducted by their fellow APD officers (Funderbrik and Noble), the R&R's other legal conclusions are correct and therefore should be adopted.

The Magistrate Judge found, based on the totality of circumstances, "particularly the intervening circumstances and the purpose and conduct of the

---

[4] As the Magistrate Judge's assessment of the time sequence did not rest on any credibility finding, the Court need not conduct a hearing to make this determination. *United States v. Cofield*, 272 F.3d 1303, 1305-1306 (11th Cir. 2001). However, if the parties view the Magistrate Judge's determination as resting on a credibility determination, the Court is prepared to hear evidence relating to this issue.

narcotics investigators" that "Defendant's consent to search was sufficiently attenuated from any prior illegal entry, search, or illegal questioning such that the evidence seized after Defendant's consent should not be suppressed." (Doc. 38 at 23.) The Magistrate Judge engaged in a careful analysis of whether the Defendant's consent to the narcotics' search here flowed from Officers' Funderbrik and Noble's prior unlawful search of the Defendant's hotel room or instead, was sufficiently attenuated to immunize the detectives' search from constitutional challenge. However, the Court notes that the Magistrate Judge's analysis fails to recognize several critical evidentiary issues here that impact the ultimate legal analysis and distinguish this case from the principal cases relied upon in the R&R's analysis, *United States v. Delancy*, 502 F.3d 1297 (11th Cir. 2007), *United States v. Santa*, 236 F.3d 6662 (11th Cir. 2000), and *United States v. Welch*, 633 F.3d 1304 (2012). Mindful that the Court did not hear the testimony and instead relies here on the transcript of the hearings on the motions to suppress, the Court discusses below its preliminary legal analysis and assessment of the evidence.

The Magistrate Judge found that the taint of the constitutionally impermissibly search of Officers Fundibrick and Noble was extinguished by the narcotics officers' purported separate role and "back-up" mission in the Defendant's arrest, their securing his execution of a written search consent form, their not engaging in any form of flagrant conduct, and finally, Defendant's volunteering of information regarding the drugs and weapons in the room.

A defendant's consent to a search may not be coerced, "by explicit or implicit means, by implied threat or covert force." *Schneckloth v. Bustamonte,* 412 U.S. 218, 228 (1973). The government bears the burden of proving that a consent following illegal police activity was not fruit of the poisonous tree. *Delancy*, 502 F.3d at 1308. The defendant's consent, whether through a consent to search or after a *Miranda* notice, does not by itself constitute a "cure" to the taint of an unlawful search. "Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.'"[5] *Brown v. Illinois*, 422 U.S. 590, 603 (1975). Thus, consent to a search after an illegal seizure will only be valid where the consent is voluntary and not a product of the illegal seizure. *Santa*, 236 F.3d at 676. "The voluntariness of consent is only a threshold requirement; a voluntary consent to search does not remove the taint of an illegal seizure. Rather, the second requirement focuses on causation: "[w]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently

---

[5] LaFave comments that "if evidence is uncovered in an illegal search and the defendant is 'face to face' with the incriminating evidence and able to see that the police had firm control over her home, a consent to the police seizure of that evidence is not voluntary." 4 Wayne R. LaVave, Search and Seizure, §8.2(d)(4th ed.2004) (internal quotations and citations omitted). Where the police in the course of an illegal search find incriminating evidence at the Defendant's home or room and then obtain the permission for a further search of the location from the defendant, "the purported consent given in such circumstances is nothing more than 'submission or resignation to police authority." *Id.*

distinguishable to be purged of the primary taint." *Id.* at 676-77 (citing *Wong Sun v. United States,* 371 U.S. 471, 478 (1963) (internal quotations omitted)).

Three non-exclusive factors Courts look to in making this assessment of the taint of the illegal entry and seizure include: "[1] the temporal proximity of the seizure and the consent, [2] the presence of intervening circumstances, and, particularly, [3] the purpose and flagrancy of the official misconduct." *Id.* at 1309 (citing *Santa*, 236 F.3d at 677). A factor-based analysis should not, however, "obscure the underlying question which 'generally involves a pragmatic evaluation of the extent to which the illegal police conduct caused the defendant's response.'" *Delancy*, 502 F.3d at 1310 (citing *United States v. Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1982)). In rendering this analysis, the Eleventh Circuit has recognized, following *Brown,* how the pressures experienced by a defendant who has already succumbed to one unlawful search leading to the discovery of drugs may result in the defendant's succumbing to signing a form memorializing his agreement to a search already completed or in reality in process. *Santa*, 236 F.3d at 678. Thus, "the determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989) (citing *Schneckloth*, 412 U.S. at 224-25).

The Court's review of the transcript in this case leads it to have substantive concerns that the narcotics detectives' search was a continuation of the unconstitutional search conducted by Officers Funderbrik and Noble. Contrary

9

to the R&R finding, the evidence indicates that the detectives' function was to complete the investigation and search initiated by their fellow APD officers, who were not specialists in narcotics – rather than to provide security back-up support.[6] (*See, e.g.,* Tr-1 at 94-95; Tr-2 at 21.) They were called to the hotel to deal with the suspected narcotics, (Tr-1 at 94-95), and arrived at the hotel soon after the unlawful searches by Officers Funderbrik and Noble had been conducted. The Defendant was sitting detained on the couch in the common living area of his hotel room, with his hands detained in handcuffs behind his back. (Tr-1 at 102.) During the initial part of the Defendant's individual meeting with the narcotics officers, he was brought separately into the bedroom where some of the unlawfully seized drugs were in plain view of the officers and the Defendant. (Tr-1 at 94, 109.) The narcotics officers knew their mission was to wrap-up the search and arrest procedure. Meanwhile, Officers Funderbrik and Noble apparently remained in the hotel suite along with the three narcotics officers throughout the duration of the search and arrest. All of the police officers were armed. While the Defendant may not have been subjected to any threats by the narcotics detectives, he had just undergone a coercive interview by Funderbrik as well as an unconstitutional search of his premises by Funderbrik and Noble, was handcuffed with his hands behind his back, and was now

---

[6]   The government presented no evidence of exigency at the motions hearings. By the point of the narcotics' officers' arrival at the Defendant's hotel room, the Defendant and all other suspects were detained, handcuffed, and sitting in the common living area of the hotel room suite.

surrounded in his hotel room by five armed police officers. Faced with a search that had resulted in the discovery of drugs now in plain view and that had launched the arrival of an ever amassing group of armed police officers in his hotel suite, there was no reason for the Defendant to view the narcotics officers as functioning separately and apart from Officers Funderbrik and Noble. Under these circumstances, the Defendant's immediate succumbing to a search and interrogation that had already commenced with Officer Funderbrik's unconstitutional entry into his hotel room and coercive interrogation was natural.[7] *C.f., Wong Sun*, 371 U.S. at 486; *Santa*, 236 F.3d at 678. Finally, while no evidence was presented that the narcotics detectives had ill-motives or acted in a flagrant or abusive manner toward the Defendant in their interrogation, their mission in the hotel room was neither to prevent the destruction of evidence nor to ensure the security of their fellow officers. Indeed, the Court notes that the transcript indicates that the detectives viewed their role as continuing and completing the search for contraband and the investigation just commenced by their colleagues Funderbrik and Noble.

---

[7] The Court additionally notes that while the narcotics investigators described the Defendant's demeanor as "calm," they also described him as virtually hastily spitting out a confession upon their meeting with them and asking him to agree to the consent search. (Tr.1-67, 94-95, 105-107, 112.) Meanwhile, Defendant's girlfriend was crying. (Tr-1 at 90.) Detective Trotta confirmed that the Defendant and his cohorts in the room appeared possibly to be under the influence of crystal meth. (Tr-1 at 88.) Indeed, Trotta's finding of residue in a meth pipe, other drug paraphernalia, four or more ounces of meth in the bedroom in addition to his observation of the facial appearance of the defendant and his cohorts suggested recent usage of the drug. (Tr-1 at 81-82, 87-88.) Indeed, Defendant admitted he was an addict. (*See* Government Ex. 18.) Trotta acknowleged that consumption of meth would change the chemistry of an individual's brain. (Tr-1 at 87.)

In sum, there appears simply to have been no genuine break in the chain of events or intervening circumstances to "purge the primary taint of the unlawful invasion" or sufficiently dissipate the taint of the prior illegal entry, search, and illegal questioning on the narcotics' officers entry and search of the Defendant's premises. *Wong Sun*, 371 U.S. at 486-88. Based on the Court's assessment of the totality of evidence and the analysis, therefore, the evidence collected by the narcotics detectives bears the primary taint of the original constitutional violations and would require suppression in its entirety.

The Magistrate Judge considered the Defendant's review of a "comprehensive" APD consent search form as a significant factor in curing the taint of the initial unlawful entry, search, and interrogation, citing the *Delancy* Court's finding that "thorough notification of constitutional rights constitutes an important intervening circumstance." *Delancy*, 502 at 1311. (Doc. 38 at 21.) However, the consent form in *Delancy* was far more complete than the APD form and included salient warnings omitted in the APD form, such as notice that any contraband found during the search could be seized and used against the individual in a legal proceeding and notice of the individual's right to consult with an attorney before or during the search.[8] *Id.* at 1302. Other relevant factors also distinguish the facts in *Delancey* from this case. In *Delancy*, the officers entered the house and conducted a sweep search based on genuine concerns relating to

---

[8] The District Court in *Delancy* moreover found that the homeowner's consent was not motivated by duress but instead, her efforts to distance herself from the larger amount of contraband she knew were in the house. 502 F.3d at 1305.

their personal safety, rather than as a subterfuge. *Id.* at 1304-05. No evidence of safety or security exigencies was presented at the hearings in this case. Finally, the Court in *Delancey* considered it significant that the case involved a third party, not the defendant. It noted that "it is relevant to consider who is consenting" in determining the application of the exclusionary rule, as the prophylactic purpose of the rule would not be served where a third party non-defendant asserts that the consent was unlawfully obtained, as occurred in that case. *Id.* at 1314. This Fourth Amendment challenge here, of course is made by the Defendant.[9]

A district court's ruling on a motion to suppress involves a mixed question of law and fact. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir.1999). As the Court earlier noted, it does not have the benefit of having heard the testimony first hand. On the other hand, the Magistrate Judge's findings rejected by the Court do not appear to be based on any credibility findings and therefore would not require rehearing before the Court prior to reversal. *United States v. Cofield*, 272 F.3d at 305-1306. However, the questions posed by the Defendant's motions to suppress are close ones, particularly because neither Officer Funderbrik nor the Defendant testified and because the narcotics officers' conduct was not

---

[9] The Court similarly notes that significant facts distinguish *United States v. Welch*, 633 F.3d 1304 (2012) from the instant case. The Defendant in *Welch* initially refused to give his consent to a search of his apartment and then agreed to do so after he learned he would not be allowed back into his apartment until a warrant was secured. The district court determined based on these facts and others that "Welch consented because he was not going to be allowed back into the apartment to somehow dispose of the handgun and ammunition, so it made sense for him to agree to the search and hope the police would not find his hiding place." *Id.* at 1306.

13

flagrant or abusive. Given the serious consequences of the Court's findings and analysis, the Court will provide the parties an opportunity to request a further hearing before this Order shall be deemed final. If either party seeks such a hearing, it must file a notice of the specific issues and findings made in this Order upon which it wishes to present argument or evidence within fourteen (14) days of this Order. No issues or evidence will be reconsidered in connection with those findings of the Magistrate Judge that the Court has adopted here and which the Court deems final. If either party seeks to present evidence, it must identify what witnesses and evidence it seeks to present as well as the reasons why such evidence will further illuminate the record for the Court. If no request is filed or a request is made that is not in conformity with this directive within the fourteen day period[10], this Order shall become final.

## III. CONCLUSION

Accordingly, the Court **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge [Doc. 38] and **GRANTS IN PART** Defendant's Motion to Suppress Statements [Doc. 11]. Defendant's Motion to Suppress Evidence [Doc. 12] is **GRANTED** in its entirety pending further proceedings consistent with the terms of this Order.

---

[10] This period is excludable under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D). If a hearing is held, the period through the conclusion of the hearing is likewise excludable.

It is **SO ORDERED** this 15th day of August, 2012.


_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**